We will now hear United States v. Cantoni, 19-4358. Let everybody come up and settle themselves in at the council table. Good morning, Mr. Anderson. Good morning, Your Honor. And I understand you would like to reserve two minutes for rebuttal. Is that right? Yes, that's correct. Very good. You may proceed. May it please the Court, I'll begin with our argument relating to the exclusion of Cantoni's expert witnesses. The district court precluded the defense from calling expert witnesses to testify about complex issues relating to the government's fingerprint and cell site evidence. And at the same time, the court admitted all of the government's proposed expert testimony about those same subjects. Now, the court did not find that the defense expert's opinions were unreliable or that those proposed experts were somehow unqualified to present those specific opinions. And the government doesn't raise those kinds of arguments in their brief here. What were their opinions? What were the opinions that they were going to – they were not opinions about the evidence, right? They were not applying their expertise to the specific facts of the case but to the reliability and the credibility of the methods that the government's experts applied. So they were opinions about somebody else's opinions? About somebody else's work, essentially, about somebody else's analysis of scientific evidence, about somebody else's work in analyzing fingerprint evidence. So didn't you bring all of that in in cross-examination of the government's witnesses? No, not all of that came in. There were many things that the defense experts would have been able to present to the jury that simply weren't able to come in either because the defense wasn't able to elicit that information because the government's experts didn't know about certain studies or, importantly, because the government's primary fingerprint expert disagreed with certain of the studies that the defense expert would have testified about. Is it correct that the defense expert on fingerprinting had been excluded in several other cases? He had been excluded in several other cases where – primarily in cases in front of Irizarry where the only opinion that he sought to admit was that sometimes fingerprint examiners exaggerate the results. In this case, he wanted to admit his opinion that there is – that fingerprint analysis can't lead to categorical conclusions of identification. Second, that the NYPD latent print examiners in this particular case failed to account for the increase – The standard would be abuse of discretion? I'm sorry? The standard of review would be abuse of discretion, right, whether the trial court abused its discretion? That's correct. And if you look at – Where is the excuse? Where is the abuse? In all of the reasons that the district court did present for excluding these. The district court did not at any time say, you know what, these experts, their opinions are unreliable because they're based on fantastical evidence or data, and that was not true. And the government hasn't raised that argument here. Can I just ask you, on that first point, though, you wanted your witness to say that you can't get 100 percent certainty with fingerprints, right? Didn't the district court account for that effectively in the Daubert analysis of the government's experts by saying you're not going to be able to testify to 100 percent certainty, right? That's correct. So it seems like some of your things, some of your arguments that you wanted to present to the court through your expert were really gatekeeping questions for the district court to consider about whether the experts presented by the government were going to be reliable or not. And it looks like the district court accounted for those things and said, okay, I'll limit the government's experts in certain ways, and you can cross the government's experts in some ways. But you could have easily had an expert who looked at the fingerprints and said, I'm looking at this, and it's a gobbledygook. One simply can't tell from these prints that they match the defendant or something like that, right? Something that you could have offered as a counter-expert, right? The court didn't try to stop you from that. The court did try to stop the defense's fingerprint expert from telling the jury that the NYPD's examiners here, the ones who testified, failed to account for the increased probability of a mismatch, and he cited studies. And I just want to note that at trial, it was the government who noted that their expert has issues with one of the studies cited by the proposed defense expert. That witness, the government's witness, said she disagreed with the Presidential Commission study which found that false positive rates are much higher than the general public, and by extension, most jurors would likely believe. She also testified on cross-examination that she just disagreed with another study which found that a high rate of false positive IDs stemming from the very mode of analysis that these examiners used here… …was in fact admitted by a government witness who said, you know, there's experts that say this, and I don't agree with that. Well, that's what would have happened if your guy had come in, isn't it? But this court and other certain courts have held that it's an abuse of discretion to admit – to exclude expert testimony on a critical issue while admitting opposing expert opinions on that same issue. And that's because cross-examination of one witness when the counsel is trying to attack the reliability of their work is not a substitute for expert testimony. It may not be. It may not be as a general matter. But I'm asking about in this case, given what the cross-examination did, even if I were to agree with you that a generic witness should be admitted but you don't have to have one talking about the specific thing, which I think is probably correct. If you can have a general witness who talks about the reliability, in this case, wasn't – in the particulars of this case, where was the problem? No, they weren't. The cell site expert that the defendant tried to admit testified that the government's expert didn't perform a full and accurate analysis or validate his findings. That's page 661 through 662 of the appendix. And I just – I want to move on to my second point, but I just hope that this Court will compare the cross-examination testimony of the government's experts at 1826 through 1840 and starting at page 1540 for the cell site expert and compare those to the opinions that we're actually trying to get admitted in this case. But again, you could have proffered a cell site expert to say, I have looked at the records. This is what they show based on my experience. And then you and the government, I suppose, could have argued before the jury whose methods were more reliable and whose conclusions were more reliable, right? But that's not what the rules require. But you could have done that, right? You could have done that. You can now argue, I suppose. You could have done that if – first of all, if the defense had time to prepare a Daubert challenge in the limited time that they had available, which brings me to my second point. And that's another issue, right? With the unfair trial claim under Rule 16, Brady and the Jenks Act. The government's persistent and significant violations of its discovery obligations here deprived Cantoni of his right to a fair trial. And because of those violations, the defense team, including when they were preparing the Daubert challenges, had to constantly divert its time and attention to addressing, responding to, and addressing the belated disclosures and anticipating belated disclosures. Excuse me. The government waited until three weeks before trial to disclose 847 pages of very dense cell site data, which they had previously refused to even acknowledge their possession of, though they had had it for months. And they didn't provide a finalized expert report regarding that cell site evidence until after the trial had already started. So the defense never had a real opportunity to challenge the reliability of that evidence or to carefully review it for exculpatory information. My question is, what did you do in answer to that? Did you put kind of delays? What was your reaction to the fact that the government admittedly was very sloppy at the least? Cantoni's – The district court said it was negligence and not intentional, and therefore – but what did you do in answer to that? Cantoni's counsel very quickly diverted resources that could have been spent on other things preparing for trial in order to prepare the Daubert challenge. I mean in terms of asking the court, what steps did you take before the court to mitigate the effect of the government's delay in giving you – To exclude that evidence. Did you ask for a continuance? No. There was no request for continuance. And if you read the government's – If you needed more time to react, you could have asked for a continuance and said, well, I need time to find an expert. I need time for an expert to look at this. And granted, it's the government that started this chain, but you didn't ask for a continuance. Did not ask for a continuance because it's not up to the defense to ask for continuances to accommodate over and over again, which Cantoni already had, the government's delayed disclosures. Cantoni at one point in early – It may not be a technical requirement, but in terms of gauging the harm that was done by the delay in handing these, a court is going to look at that. I mean, it isn't a mechanical thing that says you must make this. But when we try to decide, as all of these have, is how harmful, how material, how this, one of the things we're bound to look at is whether you took steps to mitigate the effects of them. And simply asking for a mistrial or something of that sort is, you know, kind of dramatic. That's fine. And even though your red light is on, please do feel free to take the time. You may respond to Judge Calabrese's question and you will still have your answer. Yes, but in the very limited time that trial counsel in this matter had available, they moved to suppress. They got an expert. They tried to challenge it through Daubert. They tried to suppress it based on this Court's precedents and what the rules of 702 say. And the district court very soon before trial denied that motion based on reasons that we say are manifestly erroneous. I don't have time to address those here. But there's no requirement, and there should not be in any case a requirement, that if a defendant who's indicated that he wants a speedy trial and has already consented to months of adjournments to accommodate the government's slow discovery, that he should have to keep consenting to continuances. Otherwise, he's not really preserving his later challenge to the government's late disclosures and the district court's admission of those disclosures. All of the district court's reasons for admitting that evidence were clearly erroneous. It's in the special appendix. And the government, based on their brief, they seem to believe that it doesn't matter what materials they have in their possession and when and how long they have them, and it doesn't matter how many demands a defendant has made before trial and how long ago those demands were made. They can ignore those demands for months on end. And as long as the material is provided, at some point before the end of trial, there can be no claim of prejudice because the defense can just at any time request a continuance, recalibrate his strategy, and try to recall previously examined witnesses and reformulate their arguments in front of the jury. But that's not what the discovery rules require, fortunately. And so when there are so many flagrant and serious violations as there were in this case, the appropriate remedy would have been to exclude the evidence. And since it wasn't excluded, the appropriate remedy is to order a new trial. So I'm well aware of that. Thank you very much. Thank you very much. You've reserved two minutes. We'll see you again shortly. Why don't we hear from the government? Let's see. We have Ms. I apologize if I get this wrong, but is it Kamati Reddy? Ms. Kamati Reddy for the United States. Kamati Reddy. Thank you, Your Honor. May it please the Court. The government made a series of errors in its prosecution of this case, and it paid a price for those errors. The district court permitted defense counsel to call and recall law enforcement officers in the defense case and air the government's misconduct in front of the jury. It precluded the government from offering potentially helpful evidence at trial, and it ensured that the defense had a sufficient opportunity to fully utilize late disclosed evidence in its defense case. As a result, the jury hung on two of the three counts that were charged, and the government ultimately dismissed those two counts. We respectfully submit that the conviction that remains is a sound one, a conviction supported by the evidence and obtained consistent with the law and unaffected by any error. Counsel, could you explain to us why the late disclosures? Your Honor, I have no excuses for you. What happened in this case was unacceptable. I do believe, as Judge Calabresi mentioned earlier, it was sloppy. The prosecutor's conduct reflected a lack of diligence. I didn't say it was sloppy. The district court said it was sloppy. I believe you're both right, Your Honor. No, but don't we have here, though, a troublesome thing, that much of the evidence that was put in, evidence of location and things like that, were clearly not believed sufficiently by the jury to convict. They hung on the areas where location was most important. They convicted only on one where location was not that useful because he lived nearby, so that the location evidence was not in. They did not convict in the cases where there was an explosion but no sign of the thing. The only thing that distinguished the case on which they convicted was that there was the palm print evidence. So don't we have to focus on that as being really the key to this case and then doesn't the argument made by opposing counsel about the fact that the court declined to allow this witness on his side on the ground that he would talk generically, but there's no law that you can't talk generically about the value of fingerprint evidence, if that speaks then to how good it is in this case. Don't we have to focus on that? I mean, isn't there a genuine possibility here of a – the only thing the court found – the jury found guilty on might not be there if that fingerprint evidence had been charged? Judge Calabruzzi, let me answer that with three points. First, I agree with Your Honor that any error with respect to the disclosure or use of cell site data is harmless as to the count of conviction, because ultimately the government cell site expert testified and conceded that the cell site ping admitted at trial would – could be equally consistent with the defendant simply being at home. Well, but there might be some spillover as to those things as to what they then thought in the one case that they convicted. I'm sorry, Your Honor. I could not hear that last time. Some spillover from the evidence about the cases where they hung into, well, but maybe this guy. In this case, we have enough, but some spillover effect from those, even though it wasn't relevant to the one on the – which they convicted. Your Honor, the defense makes that same point. Their concern is that the jury followed a pattern theory and that they were not sufficiently able to debunk that theory at trial. But we would submit that the jury's very careful verdict over two and a half days of deliberations and some 14-odd jury notes shows that they did not follow a pattern theory, that they evaluated each robbery on its own merits, and therefore, there is not a concern, should not be a concern about spillover prejudice. To answer Your Honor's earlier questions about the focus on the fingerprint evidence, I would say two things. First, Your Honors were correct to note that the proposed expert testimony from the defense on fingerprints, the actual substance of the testimony did come in at trial. There were three points that the defense experts sought to admit. One — But isn't there a difference between the substance coming in on cross-examination and the defendant being able to affirmatively offer those conclusions? There is, Your Honor. I mean, there could be certainly more effective if the defense expert were to be called. Your Honor, there's definitely a difference. But I think in the context of this case, when it's essentially all of the actual substantive points have come in, it is within the district court's very broad discretion to preclude an expert that would otherwise be – My point is they came in, but could they have come in more persuasively if the presentation had been different? Well, the concern — I think, first of all, I think a strong argument can be made that it's even more persuasive when the government's own expert concedes a defense point. Second, I think that in this context, the remainder, whatever would have remained of the defense expert's testimony was merely conjecture and speculation. As the Court noted, it did not have an independent opinion. And one of the defense's citations actually speaks directly to this. The defense cites in both their opening and reply brief, Inree Air Disaster at Lockerbie, Scotland. But unfortunately, my colleague cites the dissenting opinion in that case. The majority upholds the preclusion of expert testimony in a situation where there were proposed defense experts that weren't speculating. For the Staten Island robbery, could you just summarize the evidence? You know, we have the palm print. And what else was there? Yes, Your Honor. For the Staten Island robbery, there was a testimony of a teller, which is at Appendix 1141, stating that she saw a white male wearing a surgical mask. This is pre-COVID, so that was more of a significant event at the time. There was a hat and at least one glove. There was the latent print on the demand note, which was the palm print that was identified as Mr. Cantoni's, that's at A1807, and a cell phone pinged to a cell tower that was nearby, which the government argued showed that Mr. Cantoni was pinged simply right across the street, and the defense argued that, based on the government expert's testimony, that it could equally be consistent with the defendant sitting at home making lunch. And how far away did he live? Do we know that? He lived approximately five blocks away. Five blocks. Okay. There was also surveillance video showing Mr. Cantoni's car two blocks away, approximately 10 minutes before the robbery. Thank you. Without the print, there ain't much. Yes, Your Honor, but it is a fingerprint. And I think that there is a reason that so many courts across the country and over many decades have admitted fingerprint testimony, because, as the district court found below, and this is not challenged by the defense, it's reliable testimony. And I think you can see from the jury's evaluation of that fingerprint testimony, it's a request for a magnifying glass, that they, too, took a close look at the testimony and the fingerprint match itself. With respect to one of the arguments that the defense makes, and, Your Honor, Judge Calabresi raised a question about earlier on general principles, I do want to note that the cases cited in the defense brief on general principles, those are at the brief at page 45, generally apply to areas of the law where – I'm sorry, areas of fact that are not within the average can of the juror. For example, the cases cited talk about practices online in fantasy culture or the grooming of children. Counsel, just a side point. Was there any discussion or evidence with respect to the reliability of palm prints as against fingerprints? The reliability of – I'm sorry, Your Honor? Palm, palm prints. Oh, palm prints versus fingerprints. Yes. Your Honor, I don't – I don't believe so in the sense of – in the abstract. However, the fingerprint test – the primary – there were three witnesses that testified as to the fingerprint. The first one, Detective Ramirez, talked about the number of points of comparison that she was able to extract, and that's generally a key indicator of how to test the reliability of a fingerprint analysis. And there are more points of comparison with a palm than with a finger? Your Honor, I cannot – I cannot state whether that came into the record or not. I can certainly check and follow up. Okay. I see my time is expiring. Unless the Court has any further questions, we respectfully request that the Court affirm. Thank you very much. We will hear from Mr. Anderson. You have reserved two minutes for rebuttal. Thank you, Your Honor. I'm happy to submit some post-argument briefing if I happen to be wrong about this, but I'm quite sure, based on memory, that the record shows not that it was Mr. Cantone's car that was two blocks away from the stand on the bank, but that it was a black Cadillac that resembled Cantone's black Cadillac. With respect to our first point – I think you're right. My notes are that a car resembling Cantone's was parked two blocks away. Correct, a black – But what about the palm print? On the demand note. That's a pretty strong piece of evidence. Correct. And on cross-examination, the government's primary fingerprint-examining expert testified that there's no way of knowing when a palm print was put on a piece of paper. It could have been years or even decades before that print was located. But the odds are pretty slim that your client just happened to be unfortunate enough to That's like lightning striking, right? I would agree that the reasons that the jury likely convicted on that particular count had almost everything to do with the fingerprint evidence, and that's what makes it so critical to note that Cantone's expert, who would have attacked that fingerprint evidence, was not admitted. Because if that expert had been admitted, he would have testified about studies showing high error rates, including palm prints, I assume, but I'm not positive about that. He would have testified that the FBI specifically changed it. There is a long story on this. I mean, there is even the very dramatic decision by Judge Pollack, who taught me constitutional law in Philadelphia, to exclude because it wasn't sufficiently certain fingerprint evidence. And then after a while, this remarkable person went back and said, no, this is admissible and it is highly probative. So, you know, there's a long story ultimately saying this is reliable testimony. And we're not attacking the reliability of that testimony. I'm not saying on appeal here that the district court should not have admitted their expert testimony. I'm saying that there was no legally sufficient reason that the district court gave for excluding Cantone's countervailing expert testimony. And I'm also saying that there was prejudice to Cantone because the government's experts did not Cantone's counsel was not able to elicit all the information he would have gotten from his own experts, from those government experts at trial. And finally, I just want to note, I see that I'm over my time. You can make one final point. One last thing. I'm pleased to hear that the government is admitting that what happened in this case was absolutely wrong. There were many other instances of misconduct. But I'm also concerned that lack of consequences for the government's conduct in this case could have terrible consequences in other future cases. And so based on this court's precedence and also that, I want to ask the court to reverse and order a new trial. Thank you very much. Thank you very much to both of you for the arguments. Very helpful. We will take the case under advisement.